Titone, J.
(dissenting). These appeals test the reach of Labor Law § 240, the scaffolding act, which, with certain exclusions not relevant here, casts the owner and contractor of a construction site in absolute liability for injuries sustained by an employee at the site. In each case, I would hold that liability, if any, can be imposed only under Labor Law § 241 (6), to which comparative fault is a defense.
Labor Law § 240 is a "self-executing statute” containing specific standards with which owners and contractors must comply (Long v Forest-Fehlhaber, 55 NY2d 154, 160; see also, Monroe v City of New York, 67 AD2d 89). The duty is nondelegable and is not diminished by contributory fault (1 NY PJI2d 502). There are two subdivisions. The first requires owners and contractors to furnish and erect scaffolding and ladders which are so constructed and placed as to give proper protection to the person performing the work. The second subdivision provides that when scaffolding is more than 20 feet from the ground, it "shall have a safety rail of suitable material properly attached” (Labor Law § 240 [2]).
Although, as a statute designed to protect workers, Labor Law § 240 should be liberally construed (Zimmer v Chemung County Performing Arts, 65 NY2d 513), what amounts to an absolute duty to guarantee safety may not be extended to establish a right of recovery not envisioned by the Legislature (Mack v Altmans Stage Light. Co., 98 AD2d 468, 473; DaBolt v Bethlehem Steel Corp., 92 AD2d 70, 75; Deso v Albany Ladder Co., 26 AD2d 182, 185). It "benefits only those persons injured by a fall from an elevated height due to a lack of, or defective, safety devices designed to prevent such a fall” (Van Slyke v Niagara Mohawk Power Corp., 93 AD2d 990, 991, affd in part, appeal dismissed in part 60 NY2d 774; see also, Zimmer v Chemung County Performing Arts, supra; Mack v Altmans Stage Light. Co., supra), and does not establish a rule of law to *463 the effect that anyone who falls off a ladder may recover damages from the owner. An insurer’s liability without fault is the function of workers’ compensation, not Labor Law § 240.
In contrast to Labor Law § 240, Labor Law § 241 (6), imposes a general, albeit nondelegable, duty upon owners and contractors to provide a safe place to work. It requires all work areas to "be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein” (Labor Law § 241 [6]). The Board of Standards and Appeals is authorized to make rules to carry out the statutory purposes, a violation of which is merely evidence of negligence, and damages may be reduced by the contributory fault of the employee (Long v Forest-Fehlhaber, 55 NY2d 154, supra; La France v Niagara Mohawk Power Corp., 89 AD2d 757, appeal dismissed 58 NY2d 747; 1 NY PJI2d 502).
Thus, as we emphasized in Long v Forest-Fehlhaber (supra), Labor Law §§ 240 and 241 (6) impose different standards of care and different obligations, and for the purpose of analysis, must be kept separate and apart. When absolute liability is imposed under Labor Law § 240, the standard of care must have its roots either in the statute itself or in decisional law construing the statute; the rules of the Board of Standards and Appeals, which are pertinent in an action predicated on Labor Law § 241 (6), are foreign to Labor Law § 240 (Long v Forest-Fehlhaber, supra; see, Prosser and Keeton, Torts § 36, at 227 [5th ed]; Restatement [Second] of Torts § 285, illustration 4; § 282 comment f; 1A Warren’s Negligence, Statutes and Ordinances §§ 7.06, 9.02 [2d ed]). In my view, neither case before us comes within the ambit of Labor Law § 240.
In Bland v Manocherian, plaintiff Thomas Bland, an iron worker, was working inside the fourth floor of an apartment building. He alone took a 5-foot high wooden "A”-frame stepladder, which his employer supplied, and placed it alongside the window that he was going to remove, some 6 or 7 inches from the window sash and 9 or 10 inches from the outside of the building. It appears that he fell out the window in a feat of acrobatics, as he was reaching up to twist the sash.
Although the jury found that the ladder was not defective, it found defendant Fraydun Realty, the owner, absolutely liable because of a claimed "misplacement” of the ladder by the window, which, it bears emphasis, Bland himself had used *464 and. placed.* There is absolutely no proof in the record to support such a finding, much less a breach of duty by the defendants.
The evidence established that the ladder was placed on a level, nonslippery, wooden floor, and that it did not slip when it purportedly collapsed. There is no proof of any lack of a safety footing on the ladder which could have caused a skid. There is no direct evidence of improper placement, and, unlike Glielmi v Toys "R" Us (62 NY2d 664), no specific safety standards were submitted to the jury. In short, there is "no evidence 'that ought reasonably to satisfy a jury that the fact[s] sought to be proved [are] established’ ” (Garcia v City of New York, 65 NY2d 805, 807, affg 104 AD2d 438, quoting Blum v Fresh Grown Preserve Corp., 292 NY 241, 246). Nothing could reasonably convince a fact finder that there was any actionable breach of Labor Law § 240, and it is our duty to set the verdict aside (Garcia v City of New York, supra).
More important, I simply cannot accept the notion that there is a duty upon an owner to follow a worker and verify that the worker has "properly placed” a ladder in order for the owner to satisfy the statutory mandate. Such a proposition is, on its face, absurd. Indeed, Bland himself testified that he would only take directions from his foreman and would pay no attention to anyone else.
I read Zimmer v Chemung County Performing Arts (65 NY2d 513, supra) and Haimes v New York Tel. Co. (46 NY2d 132) as requiring owners and contractors to supply safe equipment and safety devices. In Zimmer, it was an "uncontroverted fact that no safety devices were provided to plaintiff at the work-site” (65 NY2d, at p 523; emphasis supplied), which is not the case here. These authorities should not be extended to cover injuries more appropriately compensated through the Workers’ Compensation Law.
It may be that Bland could have recovered damages above that provided by workers’ compensation by proceeding under a Labor Law § 241 (6) theory. In that case, of course, his own culpable conduct would have reduced recoverable damages. The case should not be returned for a new trial, however, because plaintiff’s counsel expressly declined to submit that cause of action to the jury.
*465 In Wright v State of New York, the basis for reversal is even more clear. The Court of Claims found liability under Labor Law § 241 (6) because of a failure to supply guardrails on the scaffold involved, reduced recovery by reason of the workers’ culpable conduct, and dismissed the spouse’s claim for loss of consortium. The Appellate Division, however, reversed and granted full recovery, including $10,000 for loss of consortium, on the theory that the failure to supply guardrails on the scaffold was the proximate cause of injury, mandating recovery under Labor Law § 240.
As indicated, Labor Law § 240 (2) requires safety rails on scaffolds "more than twenty feet from the ground,” and since the scaffold here was seven feet from the ground, no liability may be imposed under that subdivision (Ryan v Cenci, 95 AD2d 963, 964). Nor is it appropriate to read such a safety rail requirement into the general language in subdivision 1 (see, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 97, 98). Had the Legislature intended to mandate safety rails on scaffolds less than 20 feet in height, it would have done so.
Although section 23-5.1 of the Industrial Code states that scaffolds seven feet or more should have their open sides equipped with safety railings (12 NYCRR 23-5.1 [j] [1]), that standard is irrelevant to a Labor Law § 240 claim. Use of the Industrial Code in such a circumstance amounts to an impermissible end run around Long v Forest-Fehlhaber (supra).
Insofar as the loss of consortium claim is concerned, there is no evidence to support an award of damages. As the Court of Claims observed, "the only evidence in that regard is that her husband helped around the house, drove the family car, [and] mowed the lawn with a riding mower. Since the accident he cannot do the household repairs as well as previously and he has difficulty in lifting, buttoning his shirt or tying his necktie.”
Accordingly, in Bland I would reverse the order of the Appellate Division and dismiss the complaint, and in Wright I would reverse the order of the Appellate Division and reinstate the judgment of the Court of Claims.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye and Alexander concur with Judge Jasen; Judge Titone dissents and votes to reverse in a separate opinion.
In each case: Order affirmed, with costs.

 A prior verdict, predicated on the theory that defendant failed to supply Bland with a safety belt, was reversed by the Appellate Division, First Department (93 AD2d 689).